UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**

Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
| | |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**   **[REDACTED] AMENDED** ORDER (CORRECTING DOCKET NO. 247) GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [104, 218]; DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' DEPOSITION ERRATA AND PORTIONS OF DEPOSITION TESTIMONY [116, 219]; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [117, 225]

Before the Court are three Motions:

First is Plaintiffs' Mocha Gunaratna and Renee Camenforte Motion for Class Certification and Appointment of Class Counsel (the "Class Motion"), filed on April 7, 2022.  (Docket Nos. 104, 218).  Defendant Dr. Dennis Gross Skincare, LLC filed an Opposition on July 14, 2022.  (Docket Nos. 128, 227).  Plaintiffs filed a Reply on October 21, 2022.  (Docket Nos. 165, 224).

Second is Defendant's Motion to Strike Plaintiff Camenforte's Deposition Errata and Portions of Deposition Testimony of Plaintiff Gunaratna (the "MTS"), filed on July 14, 2022.  (Docket Nos. 116, 219).   Plaintiffs filed an Opposition on October 22, 2022.  (Docket Nos. 168, 217).  Defendant filed a Reply on January 30, 2023.  (Docket Nos. 205, 220).

///

---

**CIVIL MINUTES—GENERAL**                                                      1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                                      **Date:** **April 4, 2023**

Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Third is Defendant's Motion for Summary Judgment (the "MSJ"), filed on July 14, 2022.  (Docket Nos. 117, 225).  Plaintiffs filed an Opposition on October 21, 2022.  (Docket Nos. 167, 228).  Defendant filed a Reply on January 30, 2023.  (Docket Nos. 208, 226).

In this Order, the Court relies on the complete, unsealed versions of each brief, which were filed pursuant to this Court's Order Requiring Parties to File Complete Unredacted Versions of Briefs (Docket No. 212).

The Court has read and considered the papers filed in connection with the Motions and held a hearing on March 6, 2023.

The Court rules as follows:

- The MTS is **DENIED**.  The Court does not view the testimony and/or deposition errata that Defendant seeks to strike as "sham" testimony created for the purpose of defeating summary judgment.  Rather, the testimony and errata are fair clarifications that were necessary as a result of confusing questioning.

- The Class Motion is **GRANTED**.  The Court concludes that the proposed class meets each of the Rule 23 criteria with respect to the UCL, FAL, CLRA, and express warranty claims.  The uniform nature of the labels placed on Defendant's products creates a presumption of class-wide exposure and reliance.  And because deception and materiality under California's consumer protection and express warranty laws are based on an objective standard, common questions predominate the litigation.  Any issues regarding damages calculations or ascertainability are not reasons to deny certification.  Moreover, the Court concludes that Plaintiffs have sufficiently established standing at this stage of the litigation, but Defendant is free to challenge Plaintiffs' credibility at trial.

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

- The MSJ is **DENIED** because there are triable issues of fact as to deception, reliance, materiality, and damages.  Defendant's arguments largely rely on an unsubstantiated scientific theory that "plant-based collagen" or "plant-based collagen amino acids" exist.  When that theory is properly disregarded, it becomes clear that, based on the evidence, a reasonable jury could find that the Plaintiffs purchased Defendant's skincare products under the mistaken belief that they contained collagen due to the products false or misleading label and suffered damages in the form of a price premium associated with the "collagen" claim.

## I.   BACKGROUND

The Court summarizes the facts of this action in the light most favorable to Plaintiffs as the non-moving party on the MSJ.

### A.   The Products and the Challenged Claim

Defendant is a skincare company that sells a line of products with the brand name "C + Collagen"  (the "Products").  There are four Products within the product line and every advertisement Defendant maintained for the Products at issue reflects the "C + Collagen" product name.  (*See* Plaintiff's Statement of Undisputed Facts ("PSUF") ¶ 13).  The "C + Collagen" label is printed directly on the Products' with bold font and contrasting colors.  (*Id.* ¶ 14).

On the back of the Products, in small print, there is an ingredient list that states "collagen amino acids" are in each Product.  (*Id.* ¶ 15).  On the side of the Products, in small print, there is also language describing the Products as follows:  "[a] luxurious cream powered by 3-O C technology, collagen amino acids, and our proprietary energy complex…."  (Defendant's Statement of Undisputed Facts ("DSUF") ¶ 3).  On the back of the Products' packaging (as opposed to directly on the Product bottles/containers), there is also a small vegan symbol, but it is not visible from the front of the packaging or Product bottles.  (PSUF ¶ 16).

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Below is a visual representation of the Products:



### B.    **Plaintiffs and their Purchasing Decisions**

Plaintiff Gunaratna purchased the C + Collagen Deep Cream Product at a Sephora store in Los Angeles, California in 2018 for approximately $75.  (Declaration of Mocha Gunaratna iso Class Motion ("Class Gunaratna Decl.") ¶ 4).  Gunaratna paid cash for the Product and did not maintain a receipt or the original packaging.  (DSUF ¶ 7).  Plaintiff Camenforte purchased the C+ Collagen Mist on the Dr. Dennis Gross Skincare website in 2020 for approximately $30.  (Declaration of Renee Camenforte iso Class Motion ("Class Camenforte Decl.") ¶ 4).

In deciding to purchase the Products, Plaintiffs testify that they relied upon Defendant's labeling, packaging, and advertising claims, including the bold front label that stated "C + Collagen," which they understood as a claim that the Products contained collagen (the "Collagen Claim" or the "Claim").  (PSUF ¶¶ 43-45).  Plaintiffs testified that they associated collagen with anti-aging effects, which is why

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

they sought a product that specifically contained that ingredient.  Gunaratna testified that she believed collagen was a "protein that we as humans produce, but sometimes through aging we lose[.]"  (Deposition of Mocha Gunaratna ("Gunaratna Depo.") 96:5-12).  Camenforte testified that she understand collagen to be "good for anti-aging, for wrinkles, and for keeping your face smooth and firm."  (Deposition of Renee Camenforte ("Camenforte Depo.") 66:2-5).

However, the Products do not actually contain collagen, or any amino acids sourced from collagen.  (Def. Reply to PSUF ¶ 19); *see also* (Report of John C. Fetzer, Ph.D. ("Fetzer Report") ¶ 21).  Rather, Defendant adds a small amount of an amino acid solution (with glycine, proline, and hydroxyproline), derived from corn, wheat, and soy to its Products.  (DSUF 24; *see also* PSUF 9).  Collagen is a protein consisting of 3 tightly interwoven chains of polypeptides that have very specific sequences of amino acids, including but not limited to glycine, proline, and hydroxyproline.  (*Id.* ¶¶ 20, 64).  Collagen proteins are found exclusively within the skin and tissues of animals.  (PSUF ¶ 2).  There has not been any scientifically validated report of collagen derived directly from natural plants.  (Fetzer Report ¶ 11).  While certain amino acids within collagen can also be found in vegetables, "it is not accurate to name any amino acid as a 'collagen' or name any solution that may contain some of the same amino acids from collagen as collagen."  (*Id.* ¶ 64).

Because collagen has been linked to maintaining youthful skin, hair, and nails, there is a booming market of anti-aging skincare products containing collagen in the United States.  Therefore, Plaintiffs contend that the "collagen" representations are false, misleading, and deceptive, because a reasonable consumer interprets "C + Collagen" to mean that the Products contain vitamin c and collagen.

Defendant emphasizes certain testimony from the named Plaintiffs indicating that they did not understand that collagen is exclusively sourced from animals and did not purchase the Products because of any belief regarding the source of collagen.  (DSUF ¶ 41).

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-2311-MWF (GJSx)                **Date:** **April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

### C.      Development of the Product Name

Defendant heavily deliberated the name for the Products.  The initial front-runner was "███████" as the Products are internally viewed as a vitamin C product and the company wanted the story to focus on the benefits of vitamin c, especially its ability to stimulate natural collagen production in the body.  (Def. Reply to PSUF ¶¶ 32, 34).  Given 75% of Defendant's sales are from the sales of third-party retailers (as opposed to direct-to-consumer sales), Defendant discussed potential names with its key retail clients to receive their feedback and approval.  (*See* Def. Reply to PSUF 32-37).  One retailer did not believe the "███████" name was "strong" or "hard-hitting" enough, and multiple retailers were interested in the collagen-boosting aspect of the Products.  (*Id*.).  Eventually, Defendant chose the name "C + Collagen," which a corporate representative testified is an implicit indication that ███████ "definitely liked [the name.]"  (*Id*. ¶ 36).

Defendant wanted to use other names that "may have been even more suggestive" of the fact that the Products boost internal collagen but could not use those names because of potential trademark violations.  (Deposition of Michele Snyder ("Snyder Depo.") at 117:10-118:3).  Defendant therefore used the "+" (i.e., plus sing) between the C and the word Collagen, to indicate that the vitamin c in the Products "boost" internal collagen production.  However, it is undisputed that Defendant also has another line of products called "Ferulic + Retinol," which uses the "+" to convey that those products contain both ferulic and retinol as ingredients.  (PSUF ¶¶ 49-50).  Further, Defendant was on notice of the potential for the name to be misunderstood because the company applied for, but was denied, a trademark on the name "C + Collagen," because the United States Patent and Trademark Office ("USPTO") concluded that the "C + Collagen" was "merely describ[ing] the ingredients in the applicant's goods, namely, collagen and vitamin c."  (Declaration of Yana Hart ("Hart Decl."), Ex. 23 at 1680).

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

## D.      Overview of Arguments and Previous Rulings

Based on the above allegations and evidence, Plaintiffs assert eight claims against Defendant as follows:  (1) violation of California's Consumers Legal Remedies Act ("CLRA"); (2) violation of California's False Advertising Law ("FAL"); (3) violation of California's Unfair Competition Law ("UCL"); (4) Breach of Express Warranty; (5) Breach of Implied Warranty; (6) Violation of Written Warranty pursuant to the Magnuson Moss Warranty Act; (7) Violation of Implied Warranty of Merchantability pursuant to the Magnuson Moss Warranty Act; and (8) Unjust Enrichment.

Defendant argues that its labeling is not false for two reasons.  First, Defendant contends that consumers understand "C + Collagen" to mean that the products contain Vitamin "C", and Vitamin C boosts ("+") the body's natural production of "Collagen." (MSJ at 2)

Second, Defendant argues that the "collagen" label is not false because the Products actually contain plant-sourced "collagen amino acids," which, according to Defendant is truthfully represented on the Products' ingredients panel on the packaging.  (*Id.* at 1).  Plaintiffs respond arguing that this theory is devoid of any factual or scientifically valid support.  (MSJ Opp. at 2).

Defendant also argues that the "collagen" representation cannot be false or material because, the amino acids in Defendant's Products are chemically and functionally identical to hydrolyzed animal collagen.  By this, Defendant suggests that it has added glycine, proline, and hydroxyproline (i.e., certain amino acids) to the Products, which are amino acids that can be found in both plants and collagen, and which make the Products effective at achieving its purported goals.  (MSJ at 6-10). Plaintiffs contend that the efficacy of the Products is irrelevant because, regardless of whether the product works, Defendant intentionally chose to capitalize on the buzz around "collagen" products instead of investing in marketing to explain to consumers that plant-based amino acids have similar anti-aging attributes as collagen.  And therefore, because consumers attach value to the label "collagen," they have been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

harmed by Defendant's alleged false advertising because the Products' label distorts the available information in the market, and thereby, inflates the price of the Products. (MSJ Opp. 12-14).

Each party previously moved to exclude each of the other parties' experts and their opinions.  In a comprehensive order, the Court denied Defendant's Motion concluding that all of the challenges went to the weight, not admissibility, of the evidence.  (*Daubert* Order (Docket No. 246 (redacted version)).  However, the Court granted in part Plaintiffs' motion.

Specifically, the Court excluded certain opinions of Dr. Sarah Aaron, M.D., Ph.D., Defendant's dermatologist expert, regarding the equivalency of the vegetable amino acid solution in the Products with hydrolyzed animal collagen, as the Court determined that, unlike Plaintiffs' expert, Dr. Aaron did not have an adequate background in molecular chemistry, and therefore, was unqualified to offer the equivalency opinion.  The Court also excluded her opinions to the extent she opined that there is such a thing as "vegetable collagen" or "collagen amino acids" derived from plants for similar reasons.

Further, the Court excluded portions of Defendant's consumer survey, designed and conducted by Defendant's consumer survey expert, Ms. Sarah Butler, which sought to determine what previous purchasers of the Products believed "C + Collagen" conveyed because it again improperly suggested to consumers that there is such a thing as "plant-based collagen amino acids," rendering that aspect of the survey irrelevant, unreliable, and unduly prejudicial under 403.

In sum, the Court's general takeaway was that portions of Defendant's expert's reports blindly adopted the notion that "plant-based collagen amino acids" exist, but the Court concluded that such a notion was unsupported by science, and therefore, will not be presented to the jury.  Therefore, to the extent the experts endorsed the unsubstantiated "plant collagen" theory, their opinions were excluded.  The Court continues to reject that line of argument herein and the rulings again tend to reflect Defendant's unflagging reliance on that theory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

## II.   **MOTION TO STRIKE**

Defendant moves to strike (under Rule 12(f)) Plaintiff Camenforte's Deposition Errata and Portions of Deposition Testimony of Plaintiff Mocha Gunaratna, arguing that such testimony is "sham" testimony that should not be considered by the Court.

### A.   **Legal Standard**

The Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  Fed. R. Civ. P. 12(f).  Courts may strike testimony that is determined to be a sham.  *See, e.g., Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc*., 397 F.3d 1217, 1226 (9th Cir. 2005) ("We hold that the district court did not abuse its discretion in striking the deposition errata[.]").

Under the sham affidavit rule, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co*., 952 F. 2d 262, 266 (9th Cir. 1991).  The Ninth Circuit has extended this rule to Rule 30(3) deposition corrections*.  See Hambleton*, 397 F.3d at 1225–26.  Rule 30(e) allows a deponent to make changes to their testimony "in form or substance" after a deposition.  Fed. R. Civ. P. 30(e).  However, "Rule 30(e) is to be used for corrective, and not contradictory, changes." *Id.* at 1226.  In other words, a party cannot make "changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment." *Id.* at 1225.  "[T]his type of 'sham' correction is akin to a 'sham' affidavit" that the court may strike. *Id.*

Rule 30(e) requires a reason for any changes to a deposition.  Fed. R. Civ. P. 30(e) ("If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days ... to review the transcript or recording and, if there are changes in form or substance, to sign a statement such changes and the reasons given by the deponent for making them.") (emphasis added).  As the Ninth Circuit explained, "[a] statement of reasons explaining corrections is an important component of an errata submitted pursuant to FRCP 30(e), because the statement permits an assessment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**

Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

concerning whether the alterations have a legitimate purpose." *Hambleton*, 397 F.3d at 1225.

There are two requirements for a district court to strike a deposition correction, later-given deposition testimony, or post-deposition affidavit under the sham rule. *See Van Asdale v. Int'l Game Tech*., 577 F.3d 989, 998 (9th Cir. 2009).  First, "the inconsistency between a party's deposition testimony and subsequent affidavit [or testimony or correction] must be clear and unambiguous." *Id.* at 998–99.  Second, before striking a correction, a "district court must first make a factual determination that the contradiction was actually a sham." *Id.* at 998.  To determine "whether a deposition errata constitutes a sham, courts consider circumstances including the number of corrections, whether the corrections fundamentally change the prior testimony, the impact of the corrections on the cases (including whether they pertain to dispositive issues), the timing of the submission of corrections, and the witness's qualifications to testify." *Greer v. Pac. Gas & Elec. Co*., No. CV 15-01066-EPG, 2017 WL 2389567, at *4 (E.D. Cal. June 1, 2017) (internal citations omitted).

While courts must not allow parties to simply rewrite testimony that was given under oath, courts must also recognize "that the sham affidavit rule is in tension with the principle that a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence." *Van Asdale*, 577 F.3d at 998.  "Aggressive invocation of the rule also threatens to ensnare parties who may have simply been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys." *Id*.  The Ninth Circuit has thus recognized that the sham affidavit rule "should be applied with caution." *Id.* (citations omitted).  The non-moving party is "not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Id.* at 999.

///

///

---

**CIVIL MINUTES—GENERAL**                                                    **10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

B.    **Analysis**

The MTS is an unavailing attempt by Defendant to hold the named Plaintiffs to deposition testimony that can only be understood as the result of aggressive, confusing, and largely irrelevant questioning.

*Plaintiff Gunaratna*:  Defendant argues that Plaintiff Gunaratna testified that "she would not have purchased the Products if she believed they contained animal collagen." (MTS at 1).  As an initial matter, a review of the transcript reveals Gunaratna never actually testified to those exact words.  Rather, during Gunaratna's deposition, Defendant's counsel asked Gunaratna misleading (and arguably disturbing) questions.  Specifically, Defendant's counsel asked her a series of 11 questions regarding whether she would be interested in putting "*animal tendons*," "*animal ligaments*," "*animal corneas*," "*cartilage*," "*bones*, "*guts*," "*blood vessels*," and *"hide from a cow"* on her skin — to which, she reasonably responded: "No."  (Gunaratna Depo. at 101:25-104:14; 107:2-22; 111:2-8).  The questioning culminated into a question in which Defendant's counsel asked the following question: "And you wouldn't have purchased a product, would you, if you thought that collagen was animal guts?", to which Gunaratna again responded: "No."  (*Id.* at 104:5-8).  Defendant asks the Court to conclude that such testimony unequivocally establishes that Gunaratna must not desire collagen given it is derived from the tissue of the above-mentioned animal parts.

After a break in the deposition, where counsel spoke with her client, Plaintiffs' counsel questioned Gunaratna and asked her whether "she would have purchased products that contain antiaging benefits even if they contained some animal byproducts," to which Gunaratna answered: "Yes." (*Id.* 172:7-13).  Defendant moves to strike that testimony as "sham" testimony.

Gunaratna also submitted a declaration in support of the MTS and Class Motion, clarifying her testimony.  Although it is not entirely clear, the Court assumes Defendant moves to strike the declaration as a "sham" as well.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

In the declaration, Gunaratna clarified that she would purchase the Products even if they contained animal byproducts because her desire for collagen products is separate and distinct from an aversion to putting raw, bloody guts on her skin. (Declaration of Mocha Gunaratna iso Opp. to MTS ("MTS Gunaratna Decl.")) ¶¶ 15-16).  Gunaratna clarifies that she understood the Products to have "real collagen" and because she "associate[s] collagen with antiaging benefits, [she] specifically wanted collagen in the Products."  (*Id.* ¶ 8).  She also explained that she would not have bought the Product otherwise, and instead, "would have purchased another product that did contain collagen."  (*Id.* ¶ 10).  Gunaratna further explained that she does not "even know if it is accurate to say that collagen is an animal byproduct."  (*Id.* ¶ 11).  Gunaratna further testified as follows:

> "[t]he way Defense counsel phrased these questions made me imagine putting raw animal parts on my skin.  I clarified that I would not make a conscious decision to put animal products on my face, as in my opinion, no reasonable person would agree to rub raw, bloody animal guts, animal corneas, or animal cartilage on their face.  The repeated nature of these disturbing and gruesome questions made me feel confused, uncomfortable, and pressured me into answering the questions in a particular way.
>
> I do, however, feel there is a difference between putting raw, gruesome animal guts on my face the way Defense counsel portrayed and using a skincare product with real collagen that may have originally come from an animal.  I do not think that wanting collagen in a product is the same as wanting animal corneas or ligaments in a product.  Thus, Defendant mischaracterizes my testimony to mean that I did not want the collagen product, when I did. Therefore, when I answered 'Yes' when I was asked 'Would you have purchased products that contain antiaging benefits even if they contained some animal byproducts?' this was not a "direct contradiction" of my prior testimony because not wanting to purchase "animal guts" to put on my skin does not mean I do not want a product with collagen.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:** **April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

(*Id.* ¶¶ 14-15).

The Court agrees with Gunaratna.  The inconsistencies (if any) between her deposition testimony given in response to Defendant's line of questioning compared to her deposition testimony in response to her counsel's question (and later-filed declaration clarifying her answers) cannot be understood as "clear and unambiguous." The only thing that is clear is that Gunaratna understandably does not want to rub raw animal parts on her face.  Her clarification that such testimony does not mean she is averse to using any products that are derived from animals is a fair explanation regarding her responses to confusing and misleading questions that require huge leaps in logic to even begin to understand.

Moreover, even if Gunaratna's testimony is "contradictory," the Court would not conclude the later testimony and/or declaration are a "sham" as the testimony is consistent with her testimony prior to Defendant's counsel's "animal-parts" line of questioning.

For example, Gunaratna also testified earlier in the deposition that she understood collagen to be an antiaging protein that humans produce.  (Gunaratna Depo. at 96:3-12).  Given humans are (of course) animals, this testimony demonstrates that Gunaratna was fully aware that collagen is a protein found in animals. Furthermore, she testified in the deposition that she is not a vegan and tried to explain that she did not have a fundamental aversion to animal-derived products.  (*Id.* at 110:22-111:2) (Q: "[I]f 'collagen' means 'animal parts,' you wouldn't have bought the product at all, right? A: Well, I have to tell you, I'm not vegan.  So I think that – Q: Well, that's not an answer to the question.").

Viewing Gunaratna's testimony as a whole, the Court also disagrees that the testimony in response to the animal-parts questioning is as "case-defeating" as Defendant avers.  Given the factors outlined in *Greer*, the tangential nature of the testimony militates against striking the testimony, since Gunaratna's clarifications are not the only testimony saving Plaintiffs from an adverse ruling.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Simply put, that Gunaratna did not associate collagen with the animal parts from which it is derived does not say much of anything about her desire to purchase collagen.  While many people would be happy to purchase a hamburger from a restaurant, those same people might very well say no if repeatedly asked if they would like to eat a cow's intestines, groins, or guts.  To suggest that an aversion to raw animal parts is the same as an aversion to a finished, processed product derived from animal sources is illogical and unpersuasive.

Defendant's argument again stems from a desire to convince the Court (and apparently consumers) that there are two sources of collagen, when, in fact, there is only one.  The Products prominently say "Collagen," *in the Product name*, so Defendant cannot legitimately argue that consumers purchasing the Products could have had some deep aversion to collagen itself.  But Defendant resorts to claiming that Gunaratna did not desire "*animal* collagen," apparently, as opposed to a nonexistent plant collagen.  (*See* MSJ at 10).  That consumers do not understand the chemistry is precisely why accuracy in labels matters.  Consumers are trusting that when a skincare company says their product contains a particular ingredient, such as "collagen," the product will actually contain that ingredient as it is understood by the relevant scientific-community.

At the hearing, Defendant's counsel argued that if Gunaratna actually wanted plant-based collagen she could not have been deceived because, in that case, she got exactly what she wanted.  The logical fallacy inherent in that argument is that even if Gunaratna wanted plant-based collagen (a fact that is not actually in the record), plant-based collagen is *not* exactly what she received — because there is *no such thing* as plant-based collagen.

Defendant compares this situation to a case in which the theory of liability was that the label "No Sugar Added" on a juice product mislead the plaintiff into believing that the juice was a "low calorie" option.  *Major v. Ocean Spray Cranberries, Inc.*, No. CV 12-03067-EJD, 2015 WL 859491, at *3 (N.D. Cal. Feb. 26, 2015), *aff'd*, 690 F. App'x 564 (9th Cir. 2017).  There, during the plaintiff's deposition, when asked whether she purchased the defendant's juice because she thought it was a reduced-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:** **April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

calorie product, she answered "no." *Id.* The plaintiff then tried to argue that the defendant's motion for judgment on the pleadings should not hinge on that testimony because she still relied on the "No Sugar Added" label because she thought it meant the juice was healthier than other products. However, the court rejected that argument because it differed from the theory alleged in the complaint. *See id.*

By contrast, here the theory of falsity is that "C + Collagen" conveys that the Products contain collagen. For this action to be similar to *Major*, Gunaratna would have had to testify that she did not believe the Products contained collagen. Instead, consistent with the allegations in the SAC, she testified that she saw the word "collagen" on the Product, "which lured [her] to it" and that the reason she bought the Product was because she thought it had collagen in it. (Gunaratna Depo. at 78: 19-20; 141: 14-17). Despite Defendant's contrary arguments, the theory of Plaintiffs' action is not that consumers wanted animal products; the theory is that consumers wanted real collagen. The SAC's reference to "animal parts" is merely a proxy/shortcut for proving falsity, but it is now being used by Defendant as a red herring regarding consumers' beliefs. But the SAC could say nothing about "animal parts" and still have plausible claims for relief.

Therefore, the Court will not strike Gunaratna's deposition testimony or post-deposition declaration as her testimony is neither unambiguously inconsistent nor a sham to create a dispute of fact.

***Plaintiff Camenforte***: Similarly, Defendant seeks to strike Plaintiff Camenforte's Deposition Errata under Rule 30(e), which clarified that Camenforte would not repurchase the Product "***if it doesn't contain any collagen***." (MTS Opp., Ex. C (Camenforte Depo. Errata) (emphasis added). Instead, Defendant contends that her original testimony, stating that she would not repurchase the Products, should stand. Defendant believes the testimony without the clarification provided by the Deposition Errata proves that she lacks standing to pursue injunctive relief.

The Court concludes that the Deposition Errata is a fair clarification because Camenforte's testimony that she would not purchase the Product was directly preceded

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

by a question by Defendant's counsel, asking: "You've alleged that C Plus Collagen product… does not contain collagen.  Do you know that?  Do you understand that?" (Camenforte Depo. at 84:12-2).  After indicating she understood that there was no collagen in the Products, counsel asked: "So would it be fair to say that you would not purchase the C Plus Collagen products ever again?;" to which Camenforte answered: "Yes."  (*Id.* at 84:17-22).

The Deposition Errata adds a "clarification" that she would not purchase the Products again if they do not "contain collagen" as the label claims.  The Court does not view the testimony as a clear contradiction, but rather, it is a fair qualification to a vague question.  Moreover, the testimony is consistent with Camenforte's repeated testimony that she wants to purchase products with collagen.  Therefore, the Court will not strike the Deposition Errata.  *See, e.g., Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 903 (N.D. Cal. 2016) (declining to strike errata that did not fundamentally alter testimony in light of the testimony in other parts of the deposition).

In the Reply, Defendant seems to argue that generally deposition errata testimony is judged under a stricter standard than sham affidavits.  While Defendant cites to a case discussing a split among the district courts as to the correct standard to be applied to deposition erratas following the Ninth Circuit's opinion in *Hambleton*, the Court reads *Hambleton* as unambiguously holding that in the Ninth Circuit the standard for sham affidavits and deposition erratas is the same.  (*See* Reply at 14) (citing *Alvarez v. XPO Logistics Cartage, LLC*, No. CV 18-3736-RGK (Ex), 2020 WL 11563057, at *2 (C.D. Cal. Aug. 17, 2020) ("Subsequent to *Hambleton*, district courts in the Ninth Circuit have disagreed regarding the circumstances in which procedurally compliant deposition errata nevertheless should be stricken as improper."); *but see Hambleton*, 397 F.3d at 1225 (noting the panel agreed with the Tenth Circuit, which has concluded that "attempt[s] to amend [] deposition testimony must be evaluated under the sham affidavit doctrine") (internal citations and corrections omitted).  Therefore, contradictory changes made through deposition erratas must be stricken *if they are a sham*.  *See id.* at 1224-1225 (explaining that a statement of reasons for the correction is necessary for the court to assess "whether the alterations have a legitimate purpose").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Moreover, the Court notes that the clarification is not nearly as significant as Defendant claims.  Even if the Court were to grant the MTS as to the Deposition Errata and were to further conclude that without that testimony Camenforte lacks standing for injunctive relief (which is also unlikely given the testimony in her declaration, that Defendant has not moved to strike), Plaintiffs could still pursue class-wide injunctive relief based on Gunaratna's testimony because "the Supreme Court has long recognized that in cases seeking injunctive or declaratory relief, only one plaintiff need demonstrate standing to satisfy Article III."  *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 (9th Cir. 2022) (internal citations omitted).  This further counsels against striking the Deposition Errata, given one of the main factors that Defendant argues as supporting the MTS is the dispositive nature of the change to the deposition.

Accordingly, Defendant's MTS is **DENIED**.  The Court will not strike Gunaratna's deposition testimony or Camenforte's Deposition Errata.  Defendant remains free to challenge Plaintiffs' credibility through cross-examination.

## III.    PLAINTIFFS' ARTICLE III AND STATUTORY STANDING

Defendant appears to argue that Plaintiffs must prove that each class member has standing at the class certification stage under *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021), in which, the Supreme Court held that "[e]very class member must have Article III standing in order to recover individual damages."  However, as the Ninth Circuit has recognized, the Supreme Court expressly held open the question " 'whether every class member must demonstrate standing before a court certifies a class.' "  *Olean Wholesale*, 31 F.4th at 668 (discussing *TransUnion*, 141 S.Ct. at 2208 n.4).  Accordingly, the Ninth Circuit has suggested that in light of *TransUnion*, "Rule 23 also requires a district court to determine whether individualized inquiries into th[e] standing issue would predominate over common questions."  *Id.*  Therefore, the Court addresses the *class* standing arguments in its assessment of the predominance of common issues below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL

**Case No.**  **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**

Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

However, it is clear that ***named*** plaintiffs must have standing at all stages of the litigation, including class certification.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

Additionally, California state court opinions make clear that to satisfy standing under California consumer protection laws, at least one plaintiff in a class must establish statutory standing, which requires allegations of actual exposure and reliance on the misleading or false statement.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 324-327, 93 Cal. Rptr. 3d 559 (2009).

Therefore, the Court addresses the named Plaintiffs' individual standing herein.

## A.     **Legal Standards**

***Article III Standing***:  To establish the jurisdictional element of standing, "a plaintiff must show an injury that is concrete, particularized and actual or imminent (the "injury-in-fact" requirement); traceable to the defendant's complained-of activity (the "traceability" requirement); and likely to be redressed by a decision favorable to plaintiff (the "redressability" requirement).  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  "In a class action, the plaintiff class bears the burden of showing that Article III standing exists."  *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 978 (9th Cir. 2011).  "Plaintiffs must show standing with respect to each form of relief sought."  *Id.* At least at the class certification stage, "[s]tanding exists if at least one named plaintiff meets the requirements."  *Id.*

To establish standing to seek injunctive relief under Article III in a false advertising action, the Ninth Circuit has explained that "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL


**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

would like to."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018).

   ***Statutory Standing***:  The California Supreme Court has made clear that for claims under the UCL's fraudulent prong, a plaintiff must allege "actual reliance" upon a defendant's misrepresentation or omission in order to establish standing.  *See In re Actimmune Mktg. Litig.*, No. C 08–02376 MHP, 2009 WL 3740648, at *8 (N.D. Cal. Nov. 6, 2009); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326, 93 Cal. Rptr. 3d 559 (2009) (holding that the "as a result of language" in the UCL "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong.").

   Reliance can be established by showing that but-for the defendant's fraudulent conduct, "the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct."  *Actimmune*, 2009 WL 3740648, at *8 (internal citation omitted).  That requirement, however, "does not apply to absent class members." *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282, 287 (C.D. Cal. 2011) (internal citation omitted).  The standing requirements under the FAL are identical to those under the UCL.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321–22, 120 Cal. Rptr. 3d 741 (2011).  Once a plaintiff has shown individual reliance, class-wide reliance is presumed.  *See Cartwright v. Viking Indus., Inc.*, No. V 07-2159-FCD-EFB, 2009 WL 2982887, at *11 (E.D. Cal. Sept. 14, 2009) ("Furthermore, with respect to claims brought under the CLRA or that sound in fraud, a presumption of reliance overcomes the individual nature of the reliance inquiry.").

   **B.**   **Analysis**

   Defendant does not make a clear standing argument with respect to Plaintiffs' standing to seek monetary damages under Article III or statutory standing under the California laws.  The Court is satisfied that if Plaintiffs' prevail at trial on the merits, they will also prove standing for damages under both standards.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Plaintiffs have testified that they were misled into believing that the "C + Collagen" Products contained collagen; purchased those Products because of that mistaken belief; and have suffered an economic injury in the form of a price premium associated with the misrepresentation.  (Class Gunaratna Decl. ¶ 5; *see also* Class Camenforte Decl.  ¶ 5).  To the extent Defendant's standing arguments are premised on the idea that the named Plaintiffs' deposition testimony contradicts their allegations of reliance, the Court rejects that argument and concludes that their credibility is an issue for trial (as discussed more fully in Part V of this Order addressing the MSJ).

The issue of Article III standing for injunctive relief is a closer call and courts have often struggled with injunctive-relief standing in the context of false advertising cases given the fact that once the named plaintiff becomes aware of the falsity of a claim, it is unlikely that the plaintiff will be fooled again (and any admission that the plaintiffs would purchase the products despite the misrepresentation tends to undermine materiality).

However, the Ninth Circuit has addressed this difficulty and clarified that the "imminent injury" in false advertising actions seeking injunctive relief is the fact that the plaintiff cannot trust that the Defendant's labels are truthful despite a genuine desire to repurchase the Products (assuming the labels have been corrected).  *See Davidson*, 889 F.3d at 970–71 (concluding that the named plaintiff had standing in a false advertising action where she alleged that she faces an imminent or actual threat of future harm because she "continue[d] to desire to purchase wipes that are suitable for disposal in a household toilet"; "would purchase truly flushable wipes manufactured by [the defendant] if it were possible"; "regularly visits stores . . . where [defendant's] 'flushable' wipes are sold"; and is continually presented with Kimberly–Clark's flushable wipes packaging but has "no way of determining whether the representation 'flushable' is in fact true").

Since *Davidson*, many (though not all) district courts have concluded that testimony and/or allegations regarding the plaintiffs inability to trust a label on the front of a product that a plaintiff desires to purchase is sufficient for a plaintiff to establish standing to seek injunctive relief.  *See, e.g.*, *Shank v. Presidio Brands, Inc.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

No. CV 17-00232-DMR, 2018 WL 1948830, at *3-*5 (N.D. Cal. Apr. 25, 2018) (concluding that the plaintiff's "ability to read the products' ingredients does not render [the defendant's] allegedly false advertising that the products contain "only naturally-derived" ingredients "any more truthful""); *Tucker v. Post Consumer Brands, LLC*, No. CV 19-03993-YGR, 2020 WL 1929368, at * 15 (N.D. Cal. Apr. 21, 2020) (holding that the burden is not on the plaintiff to consult the ingredient list to try to discern if the ingredients match the labels on the front of the box); *Moore v. Glaxosmithkline Consumer Healthcare Holdings (US) LLC, et. al*., No. CV 20-09077-JSW, 2021 WL 3524047, at *5 (N.D. Cal. Aug. 6, 2021) ("[The p]laintiff alleges that she continues to desire to purchase the [p]roducts if they were actually natural and would be unable to trust Defendant's label representations absent injunctive relief.  Moreover, even if Plaintiff is now aware of some synthetic ingredients, it is plausible that she would still be unable to rely on the Products' labeling in the future given her allegations that she cannot differentiate between synthetic and natural ingredients."); *but see, e.g., Stewart v. Kodiak Cakes*, LLC, 537 F. Supp. 3d 1103, 1127 (S.D. Cal. 2021) (concluding the plaintiffs lacked standing for injunctive relief because the plaintiffs "could check the nutrition facts or ingredient labeling to assess if the products still contain preservatives").

The Court finds *Moore*, *Tucker*, and *Shank* persuasive.  The Court has little difficulty concluding that absent injunctive relief Plaintiffs will be deterred from purchasing the Products due to their inability to trust the label.  Such a standard can be closely analogized to the "presently deterred" standard utilized in the ADA context.  *Cf. Civil Rights Educ. & Enf't Ctr. v. Hospitality Props. Tr. ("CREEC")*, 867 F.3d 1093, 1101 (9th Cir. 2017) ("An allegation that the plaintiff is currently deterred from visiting a facility because he is aware of discriminatory conditions there suffices to demonstrate an imminent injury[.]").

Defendant cites to *Davidson* in the Class Opposition but does not engage with its holding.  Instead, Defendant exclusively analogizes to *pre-Davidson* cases, none of which remain persuasive.

CIVIL MINUTES—GENERAL                                          21

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Here, both Plaintiffs testified that they are interested in purchasing the Products again if the labeling is accurate but that they are presently deterred from purchasing the Products because they cannot trust the labeling and do not have a sufficient scientific background to verify the ingredients Defendant uses.  Both Plaintiffs also testified that they often frequent stores or online websites, which sell Defendant's products and would be inclined to purchase the Products if they could be sure the labeling was accurate.  This testimony is precisely the type of testimony that the Ninth Circuit held was sufficient to demonstrate an imminent injury in *Davidson*.  (*See* Class Gunaratna Decl. ¶ 6; *see also* Class Camenforte Decl. ¶ 6).

Accordingly, the Court concludes that Plaintiffs have standing to seek damages and injunctive relief.  Any inconsistencies in Plaintiffs' testimony may be probed at trial as an issue of credibility.  *Accord Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 572-73 (N.D. Cal. 2020) (concluding that at least one named plaintiff made a sufficient showing for purposes of standing to seek injunctive relief on summary judgment, despite testimony that he "didn't know" if he would buy the cereal again given the products high added sugar content, concluding that the plaintiff's "future intent [to purchase products] can be explored at trial").

## IV.   **CLASS CERTIFICATION**

Plaintiffs move to certify a Class defined as follows:

All persons who purchased the Products in the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the date of court order approving or granting class certification (the "Class").

(Class Motion at 7).

Defendant contends that Plaintiffs have failed to satisfy numerous Rule 23 requirements, but namely, predominance and superiority.

///

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

### A.    **Class Certification Legal Standard**

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court."  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). To obtain class certification, the putative lead plaintiffs must "satisfy each of the four requirements of Rule 23(a) — numerosity, commonality, typicality, and adequacy — and at least one of the requirements of Rule 23(b)."  *Id.* (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

The party seeking class certification bears the burden of establishing by a preponderance of the evidence that the requirements of Rules 23(a) and 23(b) have been met.  *Olean Wholesale*, 31 F.4th at 665; *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 609 (N.D. Cal. 2010) (citing, *inter alia*, *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)).  "Courts must perform a 'rigorous analysis'" of Rule 23(a)'s requirements before concluding that class certification is appropriate.  *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)) (noting that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question").

### B.    **ANALYSIS**

#### 1.  Rule 23(a) Factors

##### a.  **Numerosity, Typicality, and Adequacy**

Defendant does not appear to dispute numerosity and typicality.  As for adequacy, Defendant's argument is that Plaintiffs do not adequately represent the class because of the testimony that Defendant argues is inconsistent with the testimony it moves to strike.  In other words, Defendant argues that Plaintiff Gunaratna is not an adequate representative because she is uninterested in putting animal parts on her face and Plaintiff Camenforte is inadequate because she does not desire to purchase the Products in the future.  Further, Defendant points to testimony of Camenforte, which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Defendant characterizes as demonstrating that "she did not care what was in the product, as long as it made her look younger."  (Class Opp. at 29) (citing Camenforte Depo. at 66:2-5).

When determining Plaintiffs' adequacy, the Court "must consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Defendant's argument appears to be that Plaintiffs are inadequate representatives because their credibility has been called into question.  But Defendant does not cite to a single case for the proposition that arguably inconsistent testimony renders named plaintiffs inadequate to represent a class.  While the Court is independently aware of case law that does consider a Plaintiffs' credibility in determining adequacy, the Court will not attempt to analogize to those cases without any guidance from the parties.  Moreover, in light of Defendant's questioning style, it is unclear to the Court whether any other possible named plaintiffs would respond any differently to the questions.

Accordingly, the Court concludes that Plaintiffs have satisfied numerosity, typicality, and adequacy.

### b.  Commonality

Defendant argues that Plaintiffs cannot show commonality, as required by Rule 23(a)(2).  Relying on *Wal-Mart*, Defendant devotes a single paragraph to arguing that commonality is not met because "Plaintiffs have not met their burden of providing evidence that there is a "common question that can resolve all of the claims in 'one stroke.'"  (Opposition at 14) (citing *Wal-Mart*, 564 U.S. at 350).  Defendant mischaracterizes the *Wal-Mart* holding.  *Wal-Mart* does not require the resolution of all claims in one stroke (and the Court does not understand how that could be so given

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)** **Date:** **April 4, 2023**

Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

essentially all claims have several elements).  The language Defendant relies on actually states as follows:

> "[A purported class's] claims must depend upon a common contention[.] . . . That common contention, moreover, must be of such a nature that it is capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve ***an issue*** that is central to the validity of each one of the claims in one stroke.

*Wal-Mart*, 564 U.S. at 350 (emphasis added).

Here, Plaintiffs argue that "determination of whether the uniform 'C + Collagen' representation deceived the public will resolve the issues that are central to the validity of the putative class's CLRA, UCL and FAL claims in one stroke."  (*See* Class Reply at 7).  Because the CLRA, UCL, and FAL apply an objective reasonable consumer test, the Court agrees.  *See Broomfield v. Craft Brew All., Inc.*, No. CV 17-01027-BLF, 2018 WL 4952519, at *5 (N.D. Cal. Sept. 25, 2018) ("Numerous courts have recognized that a claim concerning alleged misrepresentations on packaging to which all consumers were exposed is sufficient to satisfy the commonality requirement because it raises the common question of whether the packaging would mislead a reasonable consumer."); *Prescott v. Reckitt Benckiser LLC*, No. 20-cv-02101-BLF, 2022 WL 3018145, at *4 (N.D. Cal. July 29, 2022) (same); *Lytle v. Nutramax Lab'ys*, Inc., No. ED CV 19-0835-FMO (SPx), 2022 WL 1600047, at *23-24 (C.D. Cal. May 6, 2022) (same); *cf. Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 359 (2013) (the Supreme Court noting, in a securities fraud action, that "[b]ecause materiality is judged according to an objective standard, the materiality of Amgen's alleged misrepresentations and omissions is a question common to all members of the class Connecticut Retirement would represent").  Therefore, Plaintiffs have established commonality with respect to the CLRA, UCL, and FAL claims.

Plaintiffs also argue that their express breach of warranty claims (not their implied breach of warranty claims) are also susceptible to common proof.  (Class Motion at 22).  Defendant does not address the warranty claims at all.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL

**Case No.  CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**

Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Given Defendant's lack of argument, the Court's assessment of this issue is limited to the cases cited by Plaintiff.  The express warranty claims (under the California Commercial Code and the federal Magnuson Moss Warranty Act) appear to be susceptible to common proof because, like the consumer protection statutes, the claims turn on whether Plaintiffs can demonstrate that the misrepresentation would have been material to a reasonable consumer.  *See Allen v. Similasan Corp.*, 306 F.R.D. 635, 648 (S.D. Cal. 2015)  ("As with California's consumer protection statutes, [ ] class treatment of breach of express warranty claims is only appropriate if plaintiffs can demonstrate that the alleged misrepresentation would have been material to a reasonable consumer.") (internal citations omitted).  "Privity is not required for breach of express warranty claims." *Id.*  Therefore, the commonality requirement is satisfied for the breach of express warranty claims.

Accordingly, the Court concludes that Plaintiffs have satisfied each of the Rule 23(a) requirements as to the CLRA, UCL, FAL, and the express warranty claims.

## 2.  Rule 23(b)(2)

Rule 23(b)(2) allows the Court to certify a class seeking class-wide injunctive relief if "the party opposing the class acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Defendant does not appear to dispute that the standard of Rule 23(b)(2) is met beyond challenging Plaintiffs' standing to seek injunctive relief, which the Court rejects, as discussed above.

Accordingly, the Court concludes that Plaintiffs have satisfied each factor in Rule 23(a) and Rule 23(b)(2), and therefore, the Class Motion is **GRANTED** to the extent it seeks certification under Rule 23(b)(2).

///

///

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

### 3.  Rule 23(b)(3)

Rule 23(b)(3) allows the Court to certify a class seeking class-wide monetary relief but only if the additional requirements of predominance and superiority are satisfied.  *See* Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (discussing relevance of "predominance" and "superiority" requirements of Rule 23(b)(3)).  Defendant argues that Plaintiff has failed to establish both requirements under Rule 23(b)(3).

### a.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods*, 521 U.S. at 623.  It involves similar questions as the commonality analysis, but it "is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Predominance should be found when "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022 (9th Cir. 1998) (internal citation omitted).

Defendant challenges predominance on the following grounds:  (a) that individual issues predominate on the question of falsity, materiality, and reliance because consumers do not have a uniform understanding of the Claim and Plaintiffs' consumer survey evidence is flawed; (b) Plaintiffs' class-wide damages theory is not sufficiently tied to their theory of relief as required under *Comcast*; and (c) under *TransUnion*, individual issues will predominate regarding the issue of class members' standing to obtain monetary relief.

The Court discusses these arguments in turn.

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:** **April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

### i.    Deception, Materiality, and Reliance

Defendant argues that individual issues predominate because the Court will have to probe each person's understanding of the phrase "C + Collagen."  (Class Opp. at 15).  Not so.

The Ninth Circuit has noted that it is an error of law and "per se" abuse of discretion to deny class certification for claims under the CLRA and UCL (and implicitly the FAL), based on a lack of "evidence that consumers uniformly interpret the statement in a particular manner."  *Bradach v. Pharmavite LLC*, No. CV 14-3218-GHK (AGRx), 2016 WL 7647661, at *5 (C.D. Cal. July 6, 2016), *rev'd and remanded*, 735 F. App'x 251 (9th Cir. 2018).  In reversing the district court's order denying class certification in *Bradach*, the Ninth Circuit explained, that "[u]nder California law, class members in CLRA and UCL actions are not required to prove their individual reliance on the allegedly misleading statements . . . [i]nstead, the standard in actions under both the CLRA and UCL is whether 'members of the public are likely to be deceived.'"  *Bradach*, 735 F. App'x at 254 (internal citations omitted).  "For this reason, courts have explained that CLRA and UCL claims are ideal for class certification because they will not require the court to investigate class members' individual interaction with the product."  *Id*. at 254-55 (internal citation and quotation marks omitted).

The main case Defendant relies on to argue that Plaintiffs must establish that the "the challenged statements were ***facially*** uniform," and that "consumers ***understanding*** of those representations" were uniform, appears to be outdated, and is otherwise distinguishable.  (*See* Class Opp. at 15) (citing *Jones v. ConAgra Foods, Inc.*, No. CV 12-01633-CRB, 2014 WL 2702726, at *14–15 (N.D. Cal. June 13, 2014)) ("*Jones*") (emphasis in original).  In *Jones*, the "only evidence [the p]laintiffs' rel[ied] on in support" of the contention that "a reasonable consumer would attach significance to the challenged label" was an expert declaration based solely on the expert's opinion; the expert "did not survey any customers."  (*Id*. at *15).  There, the challenged statement was a label on a canned tomato product bearing the statement "100% Natural," although the product contained citric acid and/or calcium chloride.  *Id*. at *1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

The court emphasized that the word "natural" did not have a single, controlling definition and it was not even clear that the label was false.  *See id.* at 15-16.  Beyond that, the court concluded that the expert's testimony alone did not demonstrate that the claim was "material to reasonable consumers."  *Id.* at *16.  The court reasoned that the plaintiffs "need[ed] to point to some type of common proof," but failed to do so.  *Id.*

Here, Plaintiffs *do* point to common proof through the survey conducted by Plaintiffs' consumer survey expert, Dr. Forrest Morgeson, Ph.D., as discussed in the *Daubert* Order.  (*See* Report of Forrest Morgeson, Ph.D. ("Morgeson Report"), Appendix C ("Morgeson Survey"); *accord ConAgra II*, 90 F. Supp. 3d at 1020–21 (distinguishing from *Jones* on the basis that the plaintiffs adduced survey evidence that reasonable consumers associated the claim "100% Natural" with the fact that the products contained no genetically modified organisms and that the claim was material).

At the hearing, Defendant's counsel argued that the Morgeson Survey does not distinguish this action from *Jones* because the Morgeson Survey does not establish a uniform understanding of "collagen," just like the plaintiffs in *Jones* failed to establish a uniform understanding of the term "natural."  But as this Court explained in the *Daubert* Order, the ambiguity (if any) here can only be about what the "+" in "C + Collagen" conveys, because the meaning of "collagen" itself is not up for debate.  Unlike the word "natural," collagen does have a single, controlling definition.  Indeed, while Merriam-Webster lists *20* different definitions for "natural," Merriam-Webster unsurprisingly, lists *just 1* definition for collagen (a definition, which, of course, specifies that collagen is a protein found in vertebrates).  *Compare Natural,* MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/natural (last visited Mar. 3, 2023) *with Collagen,* MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/collagen (last visited Mar. 3, 2023); *see also Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 441 (E.D.N.Y. 2022) (noting the difference between false advertising cases involving amorphous labels that are not "objective term[s] that carr[y] a single definition or refer[] to a specific product feature," as opposed to representations in cases that do have "discernable meaning[s]" such as "flushable" wipes, "50% thicker" fertilizer product, and "100% Pure Olive Oil").

CIVIL MINUTES—GENERAL                                        29

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Here, the Morgeson Survey is sufficient evidence to not only show that the issues of deception and materiality (i.e., whether reasonable consumers were misled to believe, based on the "C + Collagen" label, that the Products contained collagen and purchased the Products based in part on that mistaken belief) are susceptible to common proof, but as discussed in Part V of this Order, that there are genuine issues of fact as to both of those elements.  Specifically, the Morgeson Survey demonstrated that, of those participants that provided an opinion (i.e., answered yes or no), ***95.2%*** believed that the Products ***contained*** collagen after viewing images of the Products. (Morgeson Report at 12).  Furthermore, 51.7% of participants indicated they would be at least somewhat less satisfied if they learned that the Products contained amino acids as opposed to collagen.  (*Id.* at 12-13).  And 49.2% of the sample indicated they would be at least somewhat less likely to purchase the Products again after learning the Products do not contain collagen.  (*Id.* at 13).  Dr. Morgeson concluded that each of these results are statistically significant.  (*Id.* at 12-13).

At the hearing, Defendant's counsel stressed that even taking the Morgeson Survey at face value (despite what was characterized as biased questioning), less than half of the sample population indicated that collagen was material.  However, that statistic can be easily flipped on Defendant as Plaintiffs' counsel pointed out.  That 1 in 2 of the participants were misled on a characteristic of the Product they viewed as material, does not suggest to the Court a lack of materiality.

Though the case law does not establish any uniform percentage that allows a court to conclude that the evidence shows that deception and materiality are susceptible to common proof (or sufficient to create genuine issues of fact), it would seem to the Court, that any percentage that a qualified expert determines is statistically significant should be sufficient for both certification and summary judgment.

Indeed, several courts have recognized that percentages lower than those demonstrated by the Morgeson Survey were sufficient to show common proof on a motion for class certification, especially where there is no question that all potential class members were exposed to the message because it was on all relevant products sold to the class.  *See, e.g*, *In re NJOY, Inc. Consumer Class Action Litig*., 120 F. Supp.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

3d 1050, 1112-13 (C.D. Cal. 2015) (presuming materiality where 37.1% and separately 41.5% of respondents believed the challenged statement conveyed an overall implied safety message but finding insufficient evidence of class-wide exposure where challenged statements aired on radio and television rather than on the product itself); *Oshana v. Coca–Cola Co.*, No. 04 C 3596, 2005 WL 1661999, *9 (N.D. Ill. July 13, 2005) (presumption of materiality applied where 24% of consumers indicated they "would behave differently" without the misrepresentation); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018) ("[T]he standard [under California law] requires only that the [c]ourt find there is a probability that reasonable consumers could be misled, not that they all believed 'Made From Real Ginger' means the same thing.  Plaintiffs have done that through the consumer understanding survey, which found that 78.5% of respondents believed 'Made From Real Ginger' meant made from ginger root" and where 25% indicated that the claim was a significant factor in their purchasing decision).

Defendant argues that the report of Dr. Morgeson "fails to provide evidence in support of uniformity" because the survey suffered from the following flaws: 1) the survey asked only about the word "collagen", omitting the entire phrase "C + Collagen" from the dispositive question; 2) the survey did not ask what the word "collagen" means; 3) the survey did not use a representative population; and 4) the survey did not determine whether actual purchasers rely only upon [the] "C + Collagen" message, as opposed to other relevant factors, when purchasing the products.  (Class Opp. at 15).

Defendant's arguments repeat many of the arguments rejected in the *Daubert* Order.  The Morgeson Survey showed participants six images of the frontside of the various Product bottles, each of which included the "C + Collagen" Claim.  (*See* Morgeson Report, Appendix C (Morgeson Survey)).  The Morgeson Survey then asked the following question:  "Based on your review of these images, do you think this product contains collagen?"  (*Id*).  Participants were then given the option to choose one of the following answers: "Yes," "No," or "I don't know."  (*Id*.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

It is ironic that Defendant takes issue with the fact that the Morgeson Survey did not specifically ask what "C + Collagen" means given Defendant has otherwise argued that "C + Collagen" cannot be considered in isolation but must be viewed in light of the other words on the bottles and packaging.  As Defendant pointed out at the *Daubert* hearing, certain of the packaging (which was shown to the survey participants) focuses primarily on the vitamin c ingredient, referring to the Product as a "Vitamin C Serum." (*See id*.).  Moreover, on each image shown to the participants the only place on the Product that the word "collagen" appears is within the brand name "C + Collagen." (*See id*.).  Therefore, for participants to conclude based on viewing any of the images that the Products contain collagen, the participants ***necessarily*** had to conclude that "C + Collagen" conveys that the Products contain collagen.

As for Defendant's second argument, it does not matter that consumers were not asked what collagen means because, as the Court has explained numerous times, collagen ***only has one meaning.***

As for the demographics of the survey participants and how the participants were chosen, though Defendant raises legitimate critiques, as discussed in the *Daubert* Order, those critiques go to the weight, not the admissibility, of the evidence.  *See ThermoLife Int'l, LLC v. Gaspari Nutrition Inc*., 648 F. App'x 609, 613-14 (9th Cir. 2016) (internal citation omitted) (holding that objections as to an unrepresentative sample "go only to the weight, and not the admissibility, of the survey").  The demographics of the survey population were not so divorced from the potential class as to render the survey irrelevant or inadmissible.  And even if a jury were to reject the Morgeson Survey because of its design flaws, that would not be a basis for rejecting class certification because, as the Supreme Court has explained, "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *See Amgen*, 568 U.S. at 459.

As for Defendant's final critique — that the survey "did not determine whether actual purchasers rely ***only*** upon [the] C + Collagen message" — Defendant is again wrong on the law.  *See In re Tobacco II Cases*, 46 Cal. 4th at 326 ("'It is not necessary

CIVIL MINUTES—GENERAL                                    32

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his conduct.").

And contrary to Defendant's argument, Ms. Sarah Butler's survey does not disprove that deception or materiality is incapable of class-wide proof.  Moreover, as Plaintiffs point out, if anything, certain of the non-excluded portions of  Ms. Butler's survey actually help demonstrate materiality.  Ms. Butler's survey asked participants (who were previous purchasers of Defendant's C + Collagen Products), to select the most important characteristic that "made [participants] purchase the [P]roducts the first time."  (*See* Report of Sarah Butler ("Butler Report"), Ex. E. ("Butler Survey")).  Out of the 19 possible "product characteristics," the characteristic selected by ***the largest proportion of respondents*** (46.7%) was "C + Collagen."  (*Id.*).  In other words, participants selected the Products' label more than any other characteristic as the reason for their purchase.  (Rebuttal Report of Forrest Morgeson, Ph.D. ("Morgeson Rebuttal") at 5); *see also Fitzhenry-Russell*, 326 F.R.D. at 614 ("Clearly, if a quarter of Canada Dry consumers were listing the ginger claim as a top five reason why they bought the product, the claim is material.").

Therefore, the Court concludes that Plaintiffs have shown that deception and materiality are susceptible to class-wide proof (and that there are genuine issues of fact as to both issues), and therefore, Plaintiffs need not show individual reliance because reliance is presumed upon a showing of class-wide exposure and materiality.  Here, class-wide exposure can easily be presumed given it is undisputed that every advertisement Defendant maintained for the Products reflects the "C + Collagen" product name and the "C + Collagen" label is printed directly on the frontside of the Product bottles in bold font and contrasting color.  (*See* Def. Reply to PSUF ¶¶ 13-14); *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (citing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129, 103 Cal. Rptr. 3d 83 (2009)) ("If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class."); *see also Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 895 (N.D. Cal. 2015) ("[I]n numerous cases involving claims of false-advertising, class-wide exposure has been inferred because the alleged misrepresentation is on the packaging of the item being sold.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Accordingly, the issues of deception, materiality, and reliance do not require individualized inquires that would predominate over common issues.

> **ii.** ***Comcast*: Is the Class-Wide Damages Model Tied to Plaintiffs' Theory of Liability?**

As part of the predominance inquiry, the Supreme Court has held that plaintiffs must present a damages model that measures damages resulting from the particular injury on which the defendant's liability is premised.  *Comcast*, 569 U.S. at 36; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[P]laintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.").

Defendant argues that Plaintiffs have not satisfied *Comcast* because their damages model is not tied to their theory of liability, and therefore they have not demonstrated that individualized damages issues will not predominate over common issues.

The Ninth Circuit has held that *Comcast* did not change the established law that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva*, 716 F.3d at 514.  In addition, under the California statutes, "[e]ntitlement to restitution is a separate inquiry from the amount of restitution owed." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015).  "Thus, a court need not make individual determinations regarding entitlement to restitution. . . . Instead, restitution is available on a class[-]wide basis once the class representative makes the threshold showing of liability under the UCL and FAL." *Id.*

But Plaintiffs must put forth a method that "attempt[s]" to calculate damages that are limited only to those caused by the allegedly unlawful conduct, and not some other conduct.  *Comcast*, 569 U.S. at 35.  The problem in *Comcast* was that the plaintiffs' alleged four theories of antitrust injury but the district court only allowed one theory of liability to proceed to class certification.  The damages model, however, "did not isolate damages resulting from [that] one theory of antitrust impact," instead,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

the "model assumed the validity of all four theories of antitrust impact initially advanced by respondents." *Id.* at 36.  Therefore, to satisfy *Comcast*, the but-for world advanced by a damages model must only assume the absence of the particular wrongful conduct upon which the plaintiffs' theory of liability is premised.

But *Comcast* does not demand calculation of damages with perfection.  In calculating restitution damages under the California statutes, the law "requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 938–39 (9th Cir. 1999).  "[T]he fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery." *Id*. at 939.

In the *Daubert* Order, the Court detailed the damages model proposed by Plaintiffs' damages and economic experts, Steven P. Gaskin, M.S., and Colin B. Weir, M.B.A.  The model is known as a "conjoint analysis" and, as explained in the *Daubert* Order, such analyses are regularly used in false advertising class actions.  Indeed, Plaintiffs' experts' have themselves proffered conjoint analyses in numerous class actions and courts have accepted their analyses with few exceptions.

A conjoint analysis "works by asking consumers questions that cause them to make tradeoffs between different features in a product, or with different information about the product." *Johnson v. Nissan N. Am., Inc.*, No. CV 17-00517-WHO, 2022 WL 2869528, at *5 (N.D. Cal. July 21, 2022).  "Then, using statistical comparisons, the value of a particular feature (or lack thereof) can be derived." *Id*

In the Class Opposition, Defendant first takes issue with the fact that Plaintiffs' experts have not yet actually conducted the damages model that they propose in their reports.  Several courts have rejected that the damages model must be conducted prior to class certification.  *See, e.g.*, *Lytle*, 2022 WL 1600047, at *18 (collecting cases for the proposition that "[a] plaintiff is not required to actually execute a proposed conjoint analysis to show that damages are capable of determination on a class-wide basis with common proof. . . . A plaintiff need only show that 'damages are capable of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

measurement' on a class-wide basis.") (internal citations omitted).  The cases Defendant cites are inapposite, because in those cases, courts took issue with the sufficiency of the model itself, not the absence of conclusions produced from the model.  *See, e.g.*, *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 697 (S.D. Fla. 2014) (concluding that the plaintiff's "bald, unsupported assertion" that a "hedonic regression and/or conjoint analysis" could establish a price premium for the label "All Natural" was insufficient to satisfy *Comcast* because the "plaintiff [] made no attempt to present the [c]ourt with an example or summary of the model to be applied," but explicitly acknowledging that *Comcast* does not require the plaintiff "to prove the exact amount of damages suffered").

Next, Defendant provides 16 bullet points of reasons why the damages model is insufficient.  The bullet points are essentially copied-and-pasted excerpts from Defendant's experts' reports.  (*See* Opposition at 23-24).  Defendant leaves to the Court the work of elaborating on and assessing the import of the experts' opinions.  The Court only addresses the issues that have been adequately addressed by Defendant.

Defendant contends, based on the opinion of Ms. Butler and D. Scott Bosworth, CFA, that due to the design of the survey proposed by Mr. Gaskin, there "is no way to determine the extent that [Mr.] Gaskin's proposed conjoint analysis is measuring a price premium, or simply measuring an accurate and understood benefit of the product."  (Class Opp. at 23) (citing Butler Report ¶¶ 29, 43; Report of D. Scott Bosworth ("Bosworth Report") at ¶¶ 61, 69-80).

While Defendant is free to make this critique as a matter of cross-examination, Defendant has failed to convince the Court that this criticism is fatal to the damages model.  From a substantive perspective, the Court does not necessarily agree with the contention (at least without additional explanation), given the packaging shown to consumers in Mr. Gaskin's proposed survey tests the "collagen" claim as compared to the importance attached to labels describing the desired *effects* of collagen, such as "anti-wrinkle;" "Leaves skin plump with moisture;" "anti-aging;" and "You want: Supple skin, intense hydration,"   (Report of Steven P. Gaskin ("Gaskin Report") ¶ 18, Figure 1).  By comparing these attributes (among others) to the Collagen Claim, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 20-2311-MWF (GJSx)**                          **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

conjoint analysis directly tests how consumers value the effects of collagen as compared to the Collagen Claim itself.   And perhaps even more importantly, from a procedural perspective, the Court views the argument as going to the weight not admissibility of the model.

Perhaps the most substantial and briefed issue is that this action is like that of *ConAgra I*, where the court rejected a version of Mr. Weir's damages model for failure to satisfy *Comcast* because it did not test the plaintiffs' specific theory of liability.  *See In re ConAgra Foods*, 302 F.R.D. 537, 578 (C.D. Cal. 2014) (*ConAgra I*).  In *ConAgra I*, the plaintiffs' theory of the case was that a "100% Natural" label was false because the product contained genetically-modified-organism ("GMO") ingredients.  There, the court rejected Mr. Weir's conjoint damages model because it was designed to "calculate the price premium attributable to use of the term 100% Natural," but Mr. Weir conceded that 100% Natural was not equivalent to the phrase "non-GMO," but rather, Mr. Weir stated that the word "natural" has many implications.  *See id*.  Further, the plaintiffs had not put forth any consumer surveys showing that reasonable consumers interpret the phrase 100% Natural as equivalent to non-GMO.  *See id*. at 577 ("[The] plaintiffs adduce no survey evidence concerning the actual reaction of consumers to the "100% Natural" label[.]")

However, Defendant fails to acknowledge that in a subsequent order, the court ultimately approved Mr. Weir's damages model that combined hedonic regression and a conjoint analysis, where it was informed by consumer surveys that established a non-GMO interpretation of the phrase "100% Natural."  *See ConAgra II*, 90 F. Supp. at 1019-20, 1025.

Moreover, to the extent *ConAgra I* can be said to stand for the proposition that the damages model ***itself*** needs to establish a uniform understanding of a specific misrepresentation, it is out-of-step with several other cases and seems to take *Comcast* at least one step too far in requiring Plaintiffs to prove liability twice over.  *See, e.g*, *McMorrow v. Mondelez Int'l, Inc.*, No. CV 17-2327-BAS-JLB, 2021 WL 859137, at *15 (S.D. Cal. Mar. 8, 2021) ("[The [p]laintiffs' damages model need not isolate and test the various possible interpretations of the term 'nutritious'" but may "assume[]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:** **April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

that [the plaintiff's theory of liability] is true" at the class certification stage); *see also Krommenhock*, 334 F.R.D. at 575 (noting that the plaintiffs' damages model "assume[d]" that that the challenged statements were false or misleading to reasonable consumers, "which is an appropriate starting point for a damages model (especially one in support of class certification).").

Therefore, the better reading of *ConAgra I* is that the court rejected a class-wide damages model that assumed the plaintiffs' theory of liability, where the plaintiffs had not yet shown that the theory of liability itself was susceptible to class-wide proof. This aligns with *Comcast*, given there, the plaintiffs' damages model also assumed theories of liability that the lower court had concluded were not susceptible to class-wide proof.

This action is dissimilar because here Plaintiffs **have** demonstrated that deception and materiality are susceptible to class-wide proof as already explained. Instead, the Court views the case as much more analogous to others in which district courts accepted conjoint analyses as class-wide proof of damages for false advertising claims, such as in *Fitzhenry-Russell*. There, the district court accepted a damages model that calculated the price premium of the challenged label "Made From Real Ginger." *Fitzhenry-Russell*, 326 F.R.D. at 598. The plaintiffs' theory was that the claim "Made from Real Ginger" deceived consumers into believing the product contained ginger root, rather than ginger extract. *Id.* at 612. The plaintiffs submitted a consumer survey revealing that 78.5% of consumers believed that "Made with Real Ginger" meant the products contained ginger root, sufficiently demonstrating that the question of deception was susceptible to class-wide proof. *Id.* at 613. There was also evidence of materiality, namely that 25% of purchasers had indicated that the made with real ginger claim was the reason they purchased the product.

Given the deception and materiality evidence, the district court concluded that the damages model, which calculated the price premium associated with the claim "Made with Real Ginger," was consistent with the plaintiffs' theory of liability. The court rejected the defendant's argument that plaintiffs' damages model did not match plaintiffs' theory of liability because it "calculate[d] the premium associated with all

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

possible meanings of the claim," rather than just the ginger-root meaning.  *Id.* at 614-615.  The court reasoned that "the worth of the 'Made From Real Ginger' claim will only matter in the future if a jury does find that the claim is misleading" (i.e., that reasonable consumers understand the challenged claim to mean that the product contains ginger root when in fact the product contains ginger extract).  *Id.* at 615.  Therefore, the "damages model fit[] the theory of the case" and "the price premium survey is able to calculate damages on a class-wide basis."  *Id.*; *see also Broomfield*, 2018 WL 4952519, at *17-18 (concluding that once survey evidence establishes that reasonable consumers are misled, then "the only question that remains [for the damages model] is how purchases based on that belief have injured consumers;" the actual claim and packaging becomes "irrelevant" at that stage).

Here too, the worth of the "C + Collagen" label will only matter if a jury finds that the Claim is false or misleading (i.e., that the Claim implies the Products ***contain*** collagen despite the absence of actual collagen).  Therefore, the damages model need not ***again*** test the understanding of the label but may assume that consumers understand it to mean the Products contain collagen.  Indeed, because the damages model assumes Plaintiffs' only theory of liability, it inevitably tests the price premium of ***Plaintiffs'*** theory.  In sum, Defendant's argument amounts to a contention that the damages model does not test ***Defendant's*** theory of the case – but *Comcast* requires no such thing.

Accordingly, the Court concludes that Plaintiffs' damages model satisfies *Comcast*, and therefore the issue of damages is susceptible to class-wide proof and will not lead to the predominance of individual issues.

### iii.    *TransUnion***: Can Plaintiffs Prove Class-Wide Standing for Damages?**

Defendant's argument regarding class members' standing is hard to follow but, as the Court understands it, Defendant contends that Plaintiffs' "abstract" theory of damages runs afoul of the Supreme Court's ruling in *TransUnion* and the Court will be

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:** **April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

required to conduct individual inquiries to determine each class members' standing. (*See* Class Opp. at 12).  Defendant is mistaken.

In *TransUnion*, the Supreme Court concluded that damages could not be awarded to members of a class with alerts in their credit files maintained by a credit reporting agency, indicating that the consumer's name was a potential match to a name on a list of terrorists.  *TransUnion*, 141 S. Ct. at 2201-2202.  The class contained 8,185 members, each of whom had such an incorrect alert in their file, but only 1,853 class members had their incorrect credit reports ***disseminated*** to potential creditors by the TransUnion.  *Id.* at 2202.  The Court concluded that class members whose information was disseminated to potential creditors suffered a concrete harm in the form of a reputational injury that was sufficient to establish Article III standing to seek monetary damages.  *Id.* at 2208-2209.  But the Court concluded that for the other 6,332 class members, "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm."  *Id.* at 2210.  *TransUnion*, therefore, stands for the proposition that "[e]very class member must have Article III standing in order to recover individual damages."  *Id.* at 2208.

As an initial matter, the Court clarifies that *TransUnion* does not require that Plaintiffs' ***prove*** standing as to all members of the class in order to certify the class. Indeed, the Ninth Circuit recently rejected the argument that a class may not be certified if it "potentially includes more than a de minimis number of uninjured class members."  *See Olean Wholesale*, 31 F.4th at 669.  Nonetheless, the Ninth Circuit has indicated that district courts should consider if the class is defined in a manner that will lead to the predominance of individualized issues regarding standing in light of *TransUnion*.  *See id.* at 668 n.12.

Here the class is defined to include "[a]ll persons who purchased the Products in the State of California, for personal use and not for resale" during the relevant time period.  (See Class Motion at 7).  Contrary to Defendant's argument, the class is defined in a way that ensures that all members will have suffered a concrete economic injury in the form of a price premium, if Plaintiffs succeed on the merits.  In other words, if Plaintiffs' evidence shows that Defendant charged an inflated price to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

consumers based on the Collagen Claim, that premium will have injured *all* consumers who purchased the Product(s) because they will have paid more than the fair market price.

The Ninth Circuit has recognized that where plaintiffs are "deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she *paid more for* than he or she otherwise would have had it been labeled accurately; thus, where a violation of the UCL is found, the consumer may recover restitution which is based on what a purchaser would have paid at the time of purchase if the purchaser received all the information." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (citing *Kwikset*, 51 Cal. 4th at 329) (emphasis in original).

This concept is not only supported legally, but economically.  As Plaintiffs' economics expert explains, "[c]alculating a price premium does not depend on individual behaviors or uses of the Products . . . . If the market price for the Products was higher as a result of the Claim, then ALL consumers will have paid a higher price[.]"  (Report of Colin Weir iso Class Motion ("Weir Report") ¶ 63).  "The results of the [conjoint analysis] will reveal whether or not a sufficient number of people care about the [C]ollagen [C]laim for the market price to adjust."  (Rebuttal Report of Colin Weir iso Class Motion ("Weir Rebuttal") ¶ 35).

Defendant appears to reject this argument based on the notion that the class will include consumers who did not rely on the Collagen Claim and/or consumers who were satisfied with the Product(s).

However, as the Court noted, reliance is presumed under the UCL, where there is class-wide exposure to the message because the message was prominently featured on the packaging, and under the CLRA, reliance/causation is presumed, where there is class-wide exposure and a showing of materiality.  *See Ehret*, 148 F. Supp. 3d at 901–02; *see also Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) ("Because the alleged misrepresentations appeared on the actual packages of the products purchased,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

there is no concern that the class includes individuals who were not exposed to the misrepresentation.").

        And Defendant's "satisfaction" argument misunderstands the economic theory of harm.  Plaintiffs do not argue that they were harmed because the Product did not make them look younger.  Plaintiffs' theory is that the Collagen Claim itself is valued by consumers, and therefore, by claiming its Products contained collagen, Defendant was able to charge a higher price.  Accepting a "satisfaction" argument in this context would mean a company may claim their product includes any ingredient so long as the product works as desired.  Several courts have rejected this precise argument.  *See, e.g., Mullins v. Premier Nutrition Corp.*, No. CV 13-01271-RS, 2016 WL 1535057, at *7 (N.D. Cal. Apr. 15, 2016) ("[Defendant's] advertising messages are the focus of the claims, not customer satisfaction, and therefore consumer satisfaction is irrelevant . . . . There is [ ] no need to examine whether consumers were satisfied with the product to find an injury."); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) (concluding that because "[a]ll of the proposed class members would have purchased the product bearing the alleged misrepresentations[,]" they had a "concrete injury under [California consumer protection laws] sufficient to establish Article III standing") (internal quotation marks omitted); *Lytle*, WL 1600047, at *18 (same).

        At the hearing, Defendant's counsel continued to argue that the class definition is overly broad because it will inevitably include people that understood "C + Collagen" to mean that the vitamin c in the Products boosts internal collagen and consumers who were satisfied with the Products.  However, this argument again fundamentally misunderstands the *economic* nature of the injury.  If anticompetitive behavior distorted the market – *all* consumers overpaid.  Defendant does not get to price discriminate between those who understood the label and those who did not.  The market price is set by supply and demand, and it is always the case that there are likely consumers who *would* pay more than the fair market price, but that does not mean those consumers should *have to* pay supra-competitive prices.  A price-fixing cartel cannot claim that their inflated prices are not illegal as to the consumers who are satisfied with the value of the overpriced products.  It is the distortion of the fair market value that results in injury to all purchasers of the relevant products.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Defendant's counsel also reiterated several times at the hearing that there is no price premium in the market when you compare a product that ***boosts*** collagen to a product that ***contains*** collagen.  However, that is precisely what the damages model proposed by Plaintiffs' experts is designed to test as it will show the survey participants products containing just the "C" part of the label verses products that contain just the "Collagen" part of the label; and it will further compare those labels with several effects-based messages such as "anti-aging" or "anti-wrinkle."  The model will then compare the participants' willingness to pay for each of those attributes.  By isolating the attributes in such a manner, the model should be able to determine whether Defendant truly did charge a premium due to the Collagen Claim.  If there was a premium, all who purchased the Products were economically harmed.

Therefore, the Court concludes that the class is defined in a manner that, if Plaintiffs prove liability and damages, all class members will have suffered a concrete economic injury sufficient to satisfy *TransUnion*, and therefore individual standing issues will not predominate over common issues.

Accordingly, Plaintiffs have established that individual issues will not predominate over common issues.

**b.  Superiority**

Rule 23(b)(3) also requires that a class action be a superior method for resolving Plaintiffs' claims.  A class action may be superior "[w]here class[-]wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  It is also superior when "no realistic alternative" to a class action exists. *Id*. at 1234–35.  In deciding whether a class action would be a superior method for resolving the controversy, the Court considers factors including: (1) the class members' interest in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members, (3) the desirability or undesirability of concentrating the litigation of the claims in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 20-2311-MWF (GJSx)**                    **Date:**  **April 4, 2023**

Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Defendant's only superiority argument appears to be that the class, as defined, is not ascertainable.  Defendant argues that many class members, like Plaintiff Gunaratna, may have purchased the product at a third-party retailer with cash and failed to keep a receipt, packaging, or other proof that she or he actually bought the Product(s).  (Class Opp. at 8).  Defendant contends this is particularly problematic given 75% of the sales of the Products sold in California were sold through third-party retailers, whose records may or may not be complete.  (*Id.*).

The Ninth Circuit has explained that ascertainability is not a dispositive requirement under Rule 23.  *Briseno*, 844 F.3d at 1125.  And the fact that data does not exist that might list every customer who ever purchased the Products and when is not a reason to deny certification.  *See Kumar v. Salov N. Am. Corp.*, No. CV 14-2411-YGR, 2016 WL 3844334, at *6 (N.D. Cal. July 15, 2016) (concluding class members ascertainable despite defendant's arguments that class members would have to self-identify and show "what they paid, where they purchased it, and how many times, plus whether they saw and were deceived" by a product's label)).  "Post-judgment claims forms and other tools can be used to allow defendants to test a class member's purported entitlement to damages and to apportion damages appropriately between class members." *Id.*; *see also Briseno*, 844 F.3d at 1131 ("[At] the claims administration stage, parties have long relied on 'claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims.").

Therefore, the Court agrees with Plaintiffs that each factor in Rule 23(a) and Rule 23(b)(3) is met, and that the class is appropriate for certification.

Accordingly, the Class Motion is **GRANTED**.  The class is **CERTIFIED** under Rule 23(b)(2) and Rule 23(b)(3) for the UCL, FAL, CLRA, and express warranty claims.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                      Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

## C.      **Appointment of Class Counsel**

"Unless a statute provides otherwise, a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1)(A).  In evaluating the adequacy of counsel, the Court examines the following factors: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources counsel will commit to represent the class[.]" *Id.*

Defendant does not appear to contest the appointment of Plaintiffs' current counsel, which includes lawyers Ryan J. Clarkson, Yana Hart, and Zach Chrzan, from Clarkson Law Firm, P.C.  Further, it is clear to the Court that the Clarkson lawyers are experienced, knowledgeable, and competent; that they will zealously advocate on behalf of the class; and that they will dedicate substantial time and resources to litigating this action.

Accordingly, the Class Motion is **GRANTED** to the extent it seeks appointment of the Clarkson Law Firm as class counsel.

## V.      **MOTION FOR SUMMARY JUDGMENT**

At the outset, the Court notes that Defendant's MSJ fails to identify which of Plaintiffs' claims over which Defendant seeks summary adjudication and does not make any distinctions in its arguments according to claim.  *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.") (emphasis added).  However, given that Defendant on occasion cites to the CLRA, UCL, and FAL statutes, Plaintiffs presumed in their Opposition that Defendant seeks partial summary judgment on those claims only.  (MSJ Opp. at 3 n.3).  In the Reply, Defendant did not further clarify the claims for which it sought adjudication, so the Court, like Plaintiffs, also assumes that Defendant seeks summary adjudication of the CLRA, UCL, and FAL claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 20-2311-MWF (GJSx)                **Date:**  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

At the hearing, Defendant's counsel did not provide further clarification on this issue.

### A.      **Summary Judgment Legal Standard**

In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny. *Anderson*, 477 U.S. at 242; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact.  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence.  The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).  Under the prevailing California substantive law, Plaintiffs fail to meet their burden.

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

B.    **Standards Governing Plaintiffs' Claims**

1.  **CLRA**

The CLRA prohibits unfair methods of competition and unfair or deceptive acts
or practices in connection with transactions for the sale or lease of goods to consumers.
*See* Cal. Civ. Code §§ 1750 *et seq.*  The purpose of the Act is to "protect consumers
against unfair and deceptive business practices and to provide efficient and economical
procedures to secure such protection."  Cal. Civ. Code § 1760.  Among the proscribed
practices are:

> Representing that goods or services have sponsorship,
> approval, characteristics, ingredients, uses, benefits, or
> quantities that they do not have or that a person has a
> sponsorship, approval, status, affiliation, or connection that he
> or she does not have,

and

> Representing that goods or services are of a particular
> standard, quality, or grade, or that goods are of a particular
> style or model, if they are of another.

*Id.* § 1770(a)(5), (a)(7).

2.  **UCL**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice
and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the
false advertising law]."  Cal. Bus. & Prof. Code § 17200.  Conduct is "fraudulent"
under the UCL if the conduct is "likely to deceive."  *Morgan v. AT & T Wireless
Servs., Inc.*, 177 Cal. App. 4th 1235, 1254, 99 Cal. Rptr. 3d 768 (2009).  A claim under
the "fraudulent" prong of the UCL is governed by the "reasonable consumer" standard,
which requires the plaintiff to "show that members of the public are likely to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                     **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

deceived." *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008).  "A true representation can mislead a reasonable consumer if it is actually misleading or has the capacity, likelihood or tendency to deceive or confuse members of the public." *Anderson v. The Hain Celestial Grp., Inc*., 87 F. Supp. 3d 1226, 1236 (N.D. Cal. 2015).

### 3.  FAL

The FAL makes it unlawful for a business to "disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .'" Cal. Bus. & Prof. Code § 17500.  "The law encompasses not just false statements but those statements 'which may be accurate on some level, but will nonetheless tend to mislead or deceive . . . .  A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under these sections.'" *Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l, Inc.*, 421 F.3d 981, 985 (9th Cir. 2005) (internal citation omitted).

### C.    Analysis

Defendant argues that Plaintiffs fail to establish a genuine dispute of material fact as to each of the following issues: (1) whether reasonable consumers were misled or deceived by the "C + Collagen" Claim; (2) whether the named Plaintiffs' relied on the Collagen Claim in making their purchasing decisions; (3) whether the C + Collagen claim is material to reasonable consumers; and (4) whether Plaintiffs' suffered any damages attributable to the Collagen Claim.

While, at this point, it should be clear that the Court believes there are genuine disputes of fact as to each of the above issues, the Court discusses Defendant's arguments to the extent they substantively differ from previous arguments.

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** **CV 20-2311-MWF (GJSx)**                     **Date:** **April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

### 1. Deception/Falsity

Defendant's argument that Plaintiffs have not adduced evidence creating a dispute of fact as to whether reasonable consumers were misled hinges once more on Defendant's insistence that this action involves consumers' understanding of what "collagen" means and that "plant-sourced collagen amino acids" exist. The Court again rejects both premises.

In the Opposition, Plaintiffs argue that the Collagen Claim is false "as a matter of law" and ask the Court to enter summary judgment in their favor (despite being the non-moving party). (MSJ Opp. at 8). Plaintiffs cite to a line of cases acknowledging that in certain circumstances, courts may grant summary judgment sua sponte. (*See id.*, n. 9). The majority of the cited cases, however, granted summary judgment in favor of a ***defendant*** based on a plaintiff's failed summary judgment motion, in which the plaintiff came forth with its best evidence on the merits and fell far short. For obvious reasons, courts are less likely to sua sponte grant summary judgment in favor of a non-moving party who bears the burden of proof at trial. Regardless, while the Court deems it entirely possible (if not likely) that it will grant a later-filed summary judgment motion brought by Plaintiffs on the issue of falsity, for reasons discussed below, the Court concludes that such a holding is premature.

Defendant dances around what the actual falsity issue turns on in this action. Falsity in this action is not about what consumers believe "collagen" means because the only admissible scientific evidence establishes that there is only one scientifically-accepted definition of "collagen." ***Where*** consumers believe "collagen" ***comes from*** is simply irrelevant. Consumers often do not know the sources from which the ingredients in their products are derived. And the Court is troubled, if not exasperated, by the fact that a prominent skincare company has repeatedly taken the position that if reasonable consumers believe, based on the labeling of the Products, that the Products contain a specific ingredient, the falsity of the labeling does not turn on whether the Products actually contain that ingredient, but on whether consumers understand where that ingredient comes from. That position is untenable.

---

**CIVIL MINUTES—GENERAL**                                                        **49**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                          Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Falsity in this action is also not about whether the Products actually contain collagen or amino acids derived from collagen, as the scientific community understands those terms.  It is undisputed that "the 'C + Collagen' line of products has never had amino acids sourced from collagen."  (Def. Reply to PSUF No. 19).

At bottom, the falsity of the "C + Collagen" Claim turns on how reasonable consumers interpret the "+" within the Claim.

As discussed, Plaintiffs submit the Morgeson Survey, which more than suffices to create a genuine issue of fact as to whether reasonable consumers interpret the plus sign in the Claim to mean that the Products *contain* collagen.  After viewing six images of the Products, an overwhelming majority of the participants (95.2% of those who offered an opinion and 88.6% of the total participants) responded that they believed the Products contain collagen.  Given the Products do not contain collagen as scientifically defined, there is no question that a reasonable jury could find that the Claim is false or misleading.

Indeed, the much harder question is whether to grant summary judgment in *Plaintiffs'* favor on the issue of falsity.

Defendant's original theory of the action (i.e., that consumers believe the "C + Collagen" Claim means that vitamin c *boosts* collagen), could potentially create a fact issue for a jury.  The problem is there is currently no admissible evidence showing that a statistically significant portion of consumers interpret the plus sign to mean "boost," given the Court excluded the portion of the Butler Survey that attempted, in part, to demonstrate that understanding.

However, the Court declines to grant summary adjudication on the falsity issue in favor of Plaintiffs at this time for two reasons.

*First*, Plaintiffs' consumer survey did not give survey participants the opportunity, either through a closed- or open-ended question, to express a belief that C + Collagen means that vitamin c *boosts* collagen.  While Plaintiffs are not required to disprove Defendant's theory to defeat summary judgment, without evidence on that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

theory, the Court is at least hesitant to sua sponte decide the issue as a matter of law in Plaintiffs' favor.

*Second*, as Plaintiffs point out on the issue of damages, discovery on the merits has not yet closed in this action.  Indeed, it appears to the Court that neither a non-expert discovery deadline nor an expert-discovery deadline (or even a trial date) have been set in this action.  Therefore, Defendant is free to take another bite at a consumer survey that tests solely its "vitamin c boosts collagen" theory (without also testing the "plant-based collagen" theory).  If Defendant adduces admissible evidence that reasonable consumers interpret the "+" in the Claim to mean "boosts," there will be an issue of fact for the jury to decide as to falsity.  If, at the close of discovery, no such evidence is in the record, Plaintiffs are free to move for summary adjudication on the issue of falsity.

While Plaintiffs point to California state court cases that have decided the issue of deception as a matter of law, the Court concludes that such a holding would be premature at this juncture.  However, there is little question that Plaintiffs have at least raised a genuine dispute and therefore Defendant's MSJ is **DENIED** as to the issue of falsity.

### 2.  Reliance

Defendant argues that it "is not enough for a plaintiff to show that she was 'exposed' to the defendant's advertising or purchased an allegedly mislabeled product."  (MSJ at 11) (citing *Bronson v. Johnson & Johnson*, Inc., No. C-12-04184-CRB, 2013 WL 1629191, *2-3 (N.D. Cal. Apr. 16, 2013).  But the case Defendant cites does not support its position.

In UCL cases based on a television, radio, or web advertising campaign, courts have required evidence that the plaintiffs were actually exposed to the specific allegedly false or misleading statements.  However, as previously noted, courts routinely find that reliance is presumed where, as here, the challenged claim is prominently featured on the Product itself.  It is undisputed that every advertisement

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                              **Date:** **April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Defendant maintained for the Products, reflects the C + Collagen label, as it is the *name* of the Product line.  (Def. Reply to PSUF No. 20).

Defendant again argues that the named Plaintiffs' deposition testimony, however, demonstrates that they did not in fact rely on the Collagen Claim.  Specifically, Defendant contends that "[i]n light of [Plaintiffs'] deposition testimony that they did not believe the Products contained animal material or did not care, they cannot meet that essential element [of reliance] and their claim necessarily fails." (MSJ at 11).

The Court again rejects the premise that to show reliance Plaintiffs must have wanted "animal" collagen.  Since animals are the *only* source of collagen, anyone who desires "collagen" inevitably desires "animal" collagen.  Gunaratna's testimony that she does not want to place raw animal parts on her face, does not prove that she did not want collagen in her skin cream, any more than a deponent's testimony that they do not want to consume fish bladder would prove a lack of desire for Guinness beer, as Plaintiffs' cleverly analogize.  (MSJ Opp. 17 n. 21).

And further, the Court concludes that a fair reading of Camenforte's deposition testimony does not prove that she did not care what was in the Product she purchased.  At best, her testimony is ambiguous; at worst, her testimony demonstrates that she did rely on the Collagen Claim but fell victim to counsel's strongarmed questioning.

Specifically, Defendant relies on the following exchange to argue that there is no dispute of fact as to Camenforte's reliance on the Collagen Claim:

Q: And you really didn't care what was in the product then so long as it made your skin look younger, right?

[Objection omitted]

THE WITNESS: *I saw that it had collagen on the label, and I've heard so much about it.  That's why I purchased it.*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-2311-MWF (GJSx)                  Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

Q: (BY MR. KERR) I'm asking you a different question. You don't -- is your testimony that you don't care what's in the product so as long as it makes you look younger?

MS. HART: Objection.  Misstates testimony.

THE WITNESS:  That's just part of it. If it will improve my skin, yes.

Q: (BY MR. KERR) Okay. So as long as it will improve your skin, you don't care what's in the product? You don't care what is doing that to your skin, you just want -- what the ingredient is causing the skin to look younger, you just want your skin to look younger, right, at regardless of the product?

MS. HART: Objection. Misstates the testimony. But you may answer.

THE WITNESS: Yes.

(Camenforte Depo. at 82:19-83:18).

Again, this exchange does more to establish that Camenforte did rely on the Collagen Claim than it does to refute reliance.  And to the extent Camenforte's final "yes" can be characterized as inconsistent with the previous testimony, that is a credibility issue that the jury will decide for itself.

Further, Defendant is free to attack the reasonableness of Plaintiffs' reliance on the "C + Collagen" Claim, given Plaintiffs' stated goals and desires; given Plaintiffs did not fully understand where collagen comes from; given the "collagen amino acids" qualifier in other parts of the product packing; and given the vegan symbol on the back of the Products' outer packaging.  But the Court cannot conclude that there is an absence of a genuine dispute regarding reliance based on any ground advanced by Defendant.  *See Williams,* 552 F.3d at 939–40 ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box ***to discover the truth from the ingredient list in small print on***

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-2311-MWF (GJSx)                    Date:  April 4, 2023
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

*the side of the box*. . . . Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging) (emphasis added).

Therefore, the Court concludes that there are genuine issues of fact as to reliance.

### 3.  Materiality

As already discussed at length, both the Morgeson Survey and the Butler Survey not only demonstrate that materiality is susceptible to class-wide proof but that there is a genuine dispute of fact on the issue of materiality.  Defendant's own survey reveals that the "C + Collagen" label was the product characteristic selected by the largest proportion of participants as the reason for their purchase of the Product(s).  (*See* Butler Survey).  Defendant argues that the significance of that statistic is undermined by what the participants believed "C + Collagen" means.  However, the results of the Butler Survey regarding participants understanding of the Claim have been excluded for reasons previously discussed.  Therefore, Defendant simply cannot overcome their own survey evidence that tends to demonstrate materiality.

Moreover, the internal emails and documents are replete with communications indicating that the "collagen" label was highly important to consumers, and in turn to the retailers and Defendant.  (*See, e.g*., Michele Snyder Deposition I ("Snyder Depo. I") at 16:-19) (Defendant's corporate representative explaining that when the company first showed ███████ the Products with the names "███████" or "███████," Sephora felt that those names were not "strong" or "hard-hitting" enough); *see id*. at 266:25-267:16 (the same representative noting that the fact that the Products bear the "C + Collagen" name implicitly means that ███████ "definitely liked it"); Ex. 26 (Email Thread re: Pre-Market Meeting) (one of Defendant's marketing employees noting that having a name that could be combined with "collagen" or "pro collagen" was "really great for ███").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**
Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

As another court has noted, "[r]epresentations about specific ingredients' presence or absence in a product are almost self-evidently material in that an advertiser is intending to make a consequential effect on a consumer." *Samet v. Proctor & Gamble Co.*, No. CV 12-01891-RS, 2019 WL 13167115, at \*7 (N.D. Cal. Jan. 15, 2019) (citing *Chavez v. Nestle USA, Inc.*, 511 F. App'x 606, 607 (9th Cir. 2013)) (concluding the appellants stated UCL and FAL claims where, in addition to alleging injury and reliance, "[Appellants] alleg[e] that the product actually contains very small amounts of the touted ingredient, DHA.").

In sum, the Court concludes that there is ample evidence in the record to create a dispute of fact regarding materiality.

### 4.  Damages

Defendant argues that Plaintiffs cannot prove damages because there is evidence indicating that Defendant set the price of its Products before choosing the name. Defendant claims that this shows that Defendant would not have changed the price even if the Products did not contain the Collagen Claim.  There are several problems with this argument.

*First*, as Plaintiffs explain, because the majority of sales of the Products are through retailers, it is the retailers' prices that are most probative on the issue.  Mr. Weir's economic conjoint analysis considers retail sales data from various retailers that sell the Products, and that data demonstrates that the retailers do vary the prices they set for the Products.  (Weir Rebuttal ¶ 31).

*Second*, Mr. Weir opines that "if one were to assume, *arguendo*, that Defendant would not have lowered the price in concert with demand (indicating that Defendant priced above the market clearing price), then the economic outcome would be that many or all of the purchases would not have taken place at all."  (Weir Report at ¶ 41). "As such, the price premium to be calculated by Mr. Gaskin will be an inherently conservative measure."  (*Id.*).  Defendant counters that such a conclusion is speculative, however, it is clearly driven by basic supply-and-demand economic theory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:** **April 4, 2023**

Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

within competitive markets, which Mr. Weir is qualified to opine about.  And both Plaintiffs' and Defendant's experts agree that the Products are sold within a competitive market.  (Weir Rebuttal ¶ 27) (citing Deposition of D. Scott Bosworth at 188-189).  As other courts have recognized the fact that a defendant did not adjust its price based on the misrepresentation does not disprove the existence of a price premium.  *See, e.g.*, *McCrary v. Elations Co. LLC*, No. ED CV 13-242J-GB (SPx), 2014 WL 12589137, at *9 (C.D. Cal. Dec. 2, 2014) ("A price premium may exist even though, at some point," the product "was sold at the same price" with and without the alleged misrepresentation); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 531 (N.D. Cal. 2018) ("The fact that the price of the product did not change after the representation does not establish that there is no triable issue as to whether Plaintiffs paid a price premium.").

Further, Defendant argues that given Mr. Weir concedes that the price premium will be "inherently conservative" he admits that it is not a precise measure of damages. However, Plaintiffs need not prove damages with precision to prevail on their claims. *See Marsu*, 185 F.3d at 939 ("[T]he fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery.").

Therefore, there are genuine issues of fact as to damages in the form of a price premium paid by the class.

Accordingly, the MSJ is **DENIED** because there are triable issues of facts as to Plaintiffs' claims.

## VI.   CONCLUSION

Defendant's MTS and MSJ are **DENIED**.  Plaintiffs' Motion for Class Certification is **GRANTED**.

The Court **CERTIFIES** the following class:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-2311-MWF (GJSx)**                    **Date:  April 4, 2023**

Title: Mocha Gunaratna v. Dennis Gross Cosmetology LLC et al

All persons who purchased the Products in the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the date of court order approving or granting class certification (the "Class").

This Order has been redacted pursuant to this Court's Sealing Order (Docket No. 212).  An unredacted version of this Order is simultaneously being placed on the docket under seal.

IT IS SO ORDERED.